UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LARRY D. EYLER,<br><br>             Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, [1]<br><br>             Defendant. | Case No. 3:12-cv-05938-KLS<br><br>ORDER AFFIRMING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On August 24, 2009, plaintiff filed an application for disability insurance benefits, alleging disability as of December 31, 1999, due to a bulging disc, rotator cuff damage in both arms, decreased use of his right arm, depression, left leg pain, and arthritis. See ECF #8, Administrative Record ("AR") 18, 227. That application was denied upon initial administrative

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**

ORDER - 1

review on September 9, 2009, and on reconsideration on February 26, 2010. See AR 18. A hearing was held before an administrative law judge ("ALJ") on March 9, 2011, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's wife and a vocational expert. See AR 32-79.

In a decision dated May 24, 2011, the ALJ determined plaintiff to be not disabled. See AR 18-26. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 29, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 404.981. On October 26, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #1. The administrative record was filed with the Court on January 28, 2013. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefit because the ALJ erred in discounting his credibility and in rejecting the lay witness evidence in the record from his wife. For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged and therefore that she erred in determining plaintiff to be not disabled, and thus finds defendant's decision to deny benefits should be affirmed.

DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

ORDER - 2

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.   Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. [3] Tidwell v. Apfel, 161 F.3d 599, 601

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

[3] The Social Security Act provides in relevant part that "[e]very individual who . . . is insured for disability insurance benefits," who "has filed [an] application for disability insurance benefits" and "who is under a disability .

ORDER - 3

1  (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460

2  (9th Cir. 1995) (Social Security statutory scheme requires disability to be continuously disabling

3  from time of onset during insured status to time of application for benefits, if individual applies

4  for benefits for current disability after expiration of insured status).  Plaintiff's date last insured

5  was September 30, 2005. AR 20.  Therefore, to be entitled to disability insurance benefit, he

6

7  must establish disability prior to or as of that date. Tidwell, 161 F.3d at 601.  But as explained

8  below, plaintiff has not done so in this case.

9  II.     The ALJ's Assessment of Plaintiff's Credibility

10         Questions of credibility are solely within the control of the ALJ. See Sample v.

11  Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this

12  credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a

13
    credibility determination where that determination is based on contradictory or ambiguous
14
    evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should
15
16  properly be discounted does not render the ALJ's determination invalid, as long as that

17  determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

18  (9th Cir. 2001).

19         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

20  reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

21
    The ALJ "must identify what testimony is not credible and what evidence undermines the
22
    claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless
23
24  affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

25  claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a

26  ────────────────────────────────────
    . . , shall be entitled to" such benefits. 42 U.S.C. § 423(a). If an individual is "neither fully nor currently insured, no benefits are payable." 20 C.F.R. § 404.101(a).

ORDER - 4

whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part on the basis that "[t]here are no medical records during the period at issue" to support his allegations of disabling limitations. AR 22.  This was a proper reason for doing so. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (inconsistency between claimant's subjective complaints and medical evidence can satisfy the clear and convincing requirement).  Plaintiff points to medical evidence from the late 1980s to the early 1990s to argue there is objective support for his allegations, but as noted by the ALJ that evidence well pre-dates the relevant time period.[4] See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").[5]  Nor does the medical

---

[4] Thus, the Court rejects plaintiff's assertion that the ALJ erred by failing to "point to any evidence that contradicted [his] testimony." ECF #14, p. 11.  The very fact that the record lacks objective medical evidence of significant – let alone disabling – work-related limitations during the relevant time period is itself, as just noted, a sufficient basis for discounting a claimant's testimony indicating the presence of such limitations.

[5] Plaintiff argues Carmickle is inapplicable here because in that case the Ninth Circuit stated "these opinions may be of limited relevance where the claimant never indicated having trouble performing prior to the alleged onset date, and the disability was caused by a discrete event." ECF #14, p. 3 (citing 533 F.3d at 1165).  The Ninth Circuit, however, made no such qualification on its comment concerning the limited relevance of medical opinions dated prior to the alleged onset date of disability, even though the qualifications noted by plaintiff may have been present in *that* case. See id.  Rather, the Court of Appeals merely stated the limited relevance of such opinions "is *especially true* in cases such as this where disability is allegedly caused by a discrete event." See id. (emphasis added).  As discussed elsewhere herein, furthermore, plaintiff has not shown the medical evidence in the record supports his

ORDER - 5

evidence in the record indicate any functional limitations established thereby greater than those adopted by the ALJ, continued to exist during the several subsequent years that followed prior to plaintiff's alleged onset date of disability.[6]

Plaintiff argues a March 5, 2011 evaluation report from David Millett, M.D., is consistent with his testimony. That report, however, was not provided until several years after plaintiff's insured status already had expired. See AR 605-619. Plaintiff asserts Dr. Millett "opined that prior to 2005, [he] had significant restrictions, and was only capable of a minimum amount of work." ECF #14, p. 11 (citing AR 616). But Dr. Millett's evaluation report does not support this assertion. In that report, Dr. Miller states in relevant part:

> From a functional point of view, this patient is certainly disabled as a painter and wall paper hanger. He brings with him a series of photos of his activities that he certainly cannot carry out from his previous occupation, which he historically carried out until September 30, 2005.
>
> The letter that accompanies this examination indicates the patient had functional limitations in the years leading up to his shoulder surgeries [performed in November 2007 and April 2008], and this is certainly the case, with regard to the fact that he had a very large rotator cuff tear on the right side described as massive by his treating physician, and this certainly would make it difficult for him to do overhead activities with his right arm. The patient states that even prior to September 30, 2005, he did a minimum of jobs and obviously he had significant restrictions in what type of jobs he could do even before this. As far back as December 1991, when he had a physical capacities evaluation, it was indicated that he needed to return gradually to work at a light level of physical demand. Clearly, after that the patient was able to do by his history all of the activities, at least at one point, of a painter/wallpaper hanger. I think it is reasonable to assume that after September 30, 2005, that it was inappropriate for him to do this type of activity.
>
> I have completed my opinion on physical limitations based upon today's one

---

allegation that he had a medical condition during the relevant time period that is progressive in nature, as opposed to being the result of a discrete event such as the motor vehicle accident he experienced in the mid-1980s. See AR 22.

[6] Plaintiff argues the ALJ "ignored the progressive nature of" his physical impairments, but as just discussed he points to no objective clinical findings in the record to show the functional limitations noted in the late 1980s and early 1990s continued or became progressively worse through to the relevant time period. ECF #14, p. 11.

ORDER - 6

> time evaluation, which has been requested, but obviously there is a subjective
> component to this and some of the limitations are based on pain behavior and
> self-imposed limitations by the patient and not objective with regard to the
> medical condition. This specifically refers to how long he can sit, stand, and
> walk, and whether he rates his limitations as substantially in excess of the
> objective findings.

AR 616. Dr. Millett's opinion thus shows it was not until *after* September 30, 2005, that he felt it was "reasonable to assume . . . that it was inappropriate for" plaintiff to perform his past work as a painter/wallpaper hanger, and that any functional limitations Dr. Millett noted that are more severe than those the ALJ adopted were based largely, if not solely, on plaintiff's own subjective complaints and self-reporting, rather than objective clinical findings. Given that as discussed herein the ALJ gave valid reasons for discounting plaintiff's credibility, the ALJ was not under any obligation to adopt those greater functional limitations. See Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted); see also Tonapetyan, 242 F.3d at 1149.

> Plaintiff goes on to argue the ALJ erred in finding as follows:
>
> At the hearing, the claimant testified to having problems with his shoulders as
> well. As mentioned above, the claimant's shoulder problems did not occur
> until after the claimant's date last insured. Treatment notes show that his
> shoulder problems did not begin until 2007. X-rays were taken of both his
> right and left shoulder in July of 2007, which showed a probable right rotator
> cuff tear on the right and left shoulder impingement syndrome. (Exhibit 13F,
> p. 2) He ultimately underwent surgery on both shoulders to repair his torn
> rotator cuffs, but again this happened after the period at issue (Exhibit 15F, p.
> 4-7; 7F, p. 10-12)

AR 23. The medical evidence in the record fails to show plaintiff's rotator cuff problems began prior to his date last insured. See AR 505-06, 522, 525-31, 535-37, 560-62, 584-85, 590-96, 598-601, 606-07, 609-613, 616. The only evidence plaintiff points to in support of his argument here

ORDER - 7

is his own testimony at the hearing, but that testimony is clearly contradicted by the earlier self-reports to medical providers indicating his shoulder issues did not start until approximately the beginning of 2007. See AR 560, 592, 606, 611.

Lastly, plaintiff argues the ALJ erred in finding in relevant part that:

> Based on a review of the claimant's earnings record, it appears he went back to work in 1992. (Exhibit 6D)  He testified that he formed Eyler Painting and Wall Covering at that time and performed work such as texturing, commercial and residential wall covering, pressure washing, commercial and residential painting, and fire damage restoration, all of which would involve doing more than merely sedentary work.  Although his workload declined significantly, the claimant continued to do this type of work through 2005.
>
> The undersigned acknowledges that the work the claimant performed during this time period would not be considered substantial gainful activity.  Earnings records appears [sic] to show this. (Exhibit 5D)  However, this work requires a significant amount of exertion on the part of the claimant.  It does not tend to support a conclusion that the claimant was disabled.
>
> Since the claimant may have continued to suffer some residual effects from his accident during these years, the undersigned has given him the benefit of the doubt, reducing him to light work during this period.  Due to his lumbar strain, the undersigned also reduced him to only occasional overhead reaching, and indicated that he should have avoided exposure to vibration.
>
> . . .
>
> There are also notes in the record to indicate that the claimant underwent bilateral carpal tunnel operations just prior to his accident in October of 1985. (Exhibit 1F, p. 191-193; 16F, p. 8)  The claimant testified that his carpal tunnel syndrome caused him to have no strength in his hands and that he often dropped things.  The record does not support any limitations in handling and fingering though, because the claimant continued to work as a painter during the period at issue.  He stated that he had trouble using ladders while performing this work, but did not mention having any trouble with handling brushes or other supplies.  There are no records to confirm treatment for his carpal tunnel syndrome; however, the undersigned has considered his subjective complains and has limited him to only occasional climbing of ladders, ropes, or scaffolds.

AR 23.  Plaintiff once again points to his testimony to counter the ALJ's statement that the work he continued to do during the relevant time period is inconsistent with his allegation of disabling

ORDER - 8

functional limitations.  But as discussed above, Dr. Millett's evaluation report supports the ALJ's statement here, in that Dr. Millett indicates therein that plaintiff was able to substantially perform his painting/wallpapering work through his date last insured.  Further, to the extent the ALJ can be said to have erred in failing to specifically discuss that report in her decision the Court finds any such error to be harmless, as the ALJ's consideration thereof is not likely to have resulted in a different disability determination, given Dr. Millett's comments contained therein.[7]

In regard to the ALJ's reference to absence of evidence in the record of treatment having been sought,[8] plaintiff argues the ALJ did not consider any explanations for his failure to pursue treatment, such as his testimony that "in retrospect, he had misattributed the shoulder problems that he was having in 2004 and 2005 to being tired and sore from working rather than from an injury." ECF #14, p. 14.  First, as noted above, the ALJ discounted his carpal tunnel syndrome complaints on this basis, not his shoulder problems.  Second, even if plaintiff did not recognize his shoulder problems may have been due to a prior injury, those problems apparently were not severe enough to cause him to seek treatment for them.[9]  The Court, therefore, finds that this too was a valid basis for discounting plaintiff's credibility.

III.    The ALJ's Rejection of Plaintiff's Wife's Testimony

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives

---

[7] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

[8] See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony").

[9] See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe and claimant's failure to request serious medical treatment for supposedly excruciating pain).

ORDER - 9

reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

In terms of the lay witness evidence in the record from plaintiff's wife, the ALJ found as follows:

> The record additionally contains a report from Victoria Eyler, the claimant's wife, which is generally supportive of the claimant's allegations. The report of Mrs. Eyler does not establish that the claimant is disabled. Since Mrs. Eyler is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the information provided is questionable. Moreover, by virtue of the relationship with the claimant, Mrs. Eyler cannot be considered a disinterested third party witness whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the third party report because it, like the claimant's allegations, is simply not consistent with the preponderance of the opinions and observations by medical doctors in this case.

AR 23-24. The parties agree that the first two stated reasons for rejecting the lay witness evidence from plaintiff's wife are not valid. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987) ("[O]bservations by non-medical sources as to how an impairment affects a claimant's ability to work" must be considered; "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence.") (citing 20 C.F.R. § 404.1513(e)(2)); see also Valentine v. Commissioner Social Security Administration, 574 F.3d 685, 694 (9th Cir. 2009) ("[R]egardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms

ORDER - 10

and daily activities are competent to testify as to [his or] her condition.'") (quoting Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993)).

The ALJ did not err, however, in rejecting the observations of plaintiff's wife on the basis that as with plaintiff's own testimony, it was "simply not consistent with the preponderance of the" medical evidence in the record. AR 24.  Where a claimant's testimony has been properly rejected by the ALJ, lay witness testimony that is similar thereto may be rejected for the same reasons used to reject the claimant's testimony. See Valentine, 574 F.3d at 694 (9th Cir. 2009)[10]; see also Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012).  In addition, lay testimony may be discounted if it conflicts with the medical evidence. Lewis, 236 F.3d at 511; see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).  Accordingly, the Court finds the ALJ provided germane reasons for rejecting the lay witness evidence from plaintiff's wife.

CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 29th day of October, 2013.

Karen L. Strombom
United States Magistrate Judge

---

[10] In Valentine, the Ninth Circuit held in relevant part:

> [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's] own subjective complaints.  Unsurprisingly, the ALJ rejected this evidence based, at least in part, on 'the same reasons [she] discounted [the claimant's] allegations.'  In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.

Id.

ORDER - 11